UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| **CHAMBERS OF**<br>**BRENDAN A. HURSON**<br>**UNITED STATES MAGISTRATE JUDGE** | **101 WEST LOMBARD STREET**<br>**BALTIMORE, MARYLAND 21201**<br>**(410) 962-0782**<br>**MDD_BAHChambers@mdd.uscourts.gov** |

May 8, 2023

LETTER TO ALL COUNSEL OF RECORD

Re:   *Yolanda M. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
      Civil No. 22-2145-BAH

Dear Counsel:

On August 24, 2022, Plaintiff Yolanda M. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2021). I have considered the record in this case, ECF 9, the parties' cross-motions for summary judgment, ECFs 10 and 12, and Plaintiff's reply, ECF 13. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will DENY Plaintiff's motion, GRANT Defendant's motion, and AFFIRM the Commissioner's decision. This letter explains why.

I.     **PROCEDURAL BACKGROUND**

Plaintiff protectively filed a Title II application for Disability Insurance Benefits ("DIB") on November 5, 2019, alleging a disability onset of January 15, 2019. Tr. 178–88. Plaintiff's claim was denied initially and on reconsideration. Tr. 102–05, 111–15. On September 17, 2021, an Administrative Law Judge ("ALJ") held a hearing. Tr. 38–59. Following the hearing, on November 3, 2021, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[1] during the relevant time frame. Tr. 19–33. The Appeals Council denied Plaintiff's request for review, Tr. 1–7, so the ALJ's decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

II.    **THE ALJ'S DECISION**

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The ALJ is required to evaluate a claimant's disability determination using a five-

---

[1] 42 U.S.C. §§ 301 et seq.

*Yolanda M. v. Kijakazi*
Civil No. 22-2145-BAH
May 8, 2023
Page 2

step sequential evaluation process. *See* 20 C.F.R. § 404.1520. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of January 15, 2019 through her date last insured of September 30, 2021." Tr. 21. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "Depression; Anxiety; Post-traumatic Stress Disorder ('PTSD'); Arthritis of the right knee; Spine Impairment; and Migraines." *Id.* At step three, the ALJ determined that "[t]hrough the date last insured," Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 22. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except: She can occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch but never crawl. She can never be exposed to unprotected heights or moving mechanical parts. She can tolerate occasional exposure to extreme heat. She is able to perform simple, routine tasks. She can have occasional interaction with co-workers, with the public, and with supervisors. She would be off task 5% of the time.

Tr. 25. After considering testimony from a vocational expert ("VE"), the ALJ determined that Plaintiff has no past relevant work but could perform other jobs that existed in significant numbers in the national economy, including garment folder (DOT[2] Code 789.687-066), stuffer (DOT Code 780.687-046), and marker (DOT Code 209.587-034). Tr. 32. Plaintiff's hearing attorney objected to the VE's testimony and requested time to submit a post-hearing brief, which the ALJ granted. *Id.* After Plaintiff failed to provide such a brief, the ALJ overruled Plaintiff's objection and concluded that Plaintiff was not disabled. Tr. 32–33.

---

[2] The "DOT" is shorthand for the Dictionary of Occupational Titles. The Fourth Circuit has explained that "[t]he *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

*Yolanda M. v. Kijakazi*
Civil No. 22-2145-BAH
May 8, 2023
Page 3

### III.  LEGAL STANDARD

As noted, the scope of this Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards.  *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987); *see also Britt v. Saul*, 860 F. App'x 256, 259 (4th Cir. 2021) (citing *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015)) ("A disability determination must be affirmed so long as the agency applied correct legal standards and the factual findings are supported by substantial evidence."). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g).

Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion."  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) ("[Substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'").  It is "more than a mere scintilla . . . and somewhat less than a preponderance."  *Laws*, 368 F.2d at 642.  In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence.  *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV.  ANALYSIS

Plaintiff raises one main argument on appeal: that the ALJ did not support the step five finding with substantial evidence. ECF 10-1, at 3–7.  Specifically, Plaintiff argues that this step five error stemmed from (1) the ALJ's failure to resolve Plaintiff's objection to the basis for the VE's testimony regarding job numbers and (2) the ALJ's failure to inquire about the reliability of the VE's testimony.  *Id.*  Defendant counters the ALJ reasonably chose to credit the VE's testimony, which was based on an administratively recognized source to determine the job numbers. ECF 12-1, at 5–9.

At the hearing on September 17, 2021, after questioning the VE, Plaintiff's attorney objected to "the number of jobs provided in the [VE's] testimony," arguing that "[w]e don't believe there's a way to accurately estimate job numbers by DOT codes and therefore . . . the numbers should not be considered to be substantial evidence."  Tr. 57.  Plaintiff's attorney requested that the record remain open an additional two weeks to submit a brief on the issue.  *Id.*  The ALJ gave Plaintiff's attorney one week (until September 24, 2021), but instructed that "if you need more time, call my clerk." Tr. 57–58.  On September 21, 2021, Plaintiff's attorney submitted a letter noting Plaintiff's intent to submit a post-hearing memorandum and requesting two weeks from the date of the letter "to submit rebuttal evidence and arguments in response to the vocational testimony offered at [Plaintiff's] hearing."  Tr. 273.

The ALJ issued her opinion on November 3, 2021, noting that "[t]he record remained open

for two weeks to receive any rebuttal evidence or other arguments on the vocational expert testimony, but none was received." Tr. 32. Indeed, the ALJ left the record open until October 25, 2021. *Id.* The ALJ then "overrule[d] the claimant's objection to the vocational expert testimony for two reasons." *Id.* First, Plaintiff did not supply any memorandum or rebuttal evidence within a reasonable amount of time after submitting the letter. *Id.* Second, "no tangible issue [has been] raised that [the ALJ could] address." *Id.* "[T]he vocational expert has professional knowledge and experience in job placement for over 20 years" and Plaintiff's attorney "never supplied specific arguments or issues regarding the vocational expert's testimony." *Id.* The ALJ concluded that "[w]ithout a specific argument as to what they are objecting to and no post-hearing memorandum as promised by the claimant and her representative, the vocational expert's job information is found to be reliable." *Id.*[3]

Plaintiff, noting that her argument appears to be an issue of first impression in this Court, relies on several out-of-district cases, primarily *Maniscalco v. Colvin*, 167 F. Supp. 3d 207 (D. Mass. 2016), *Henderson v. Saul*, No. 17-2846 (CKK), 2019 WL 5549907 (D.D.C. Oct. 28, 2019), and *Pedone v. Berryhill*, No. 26-cv-02767-STV, 2018 WL 460063 (D. Colo. Jan. 18, 2018). In *Maniscalco*, the VE testified that "the job numbers she provided were calculated using software called 'SkillTRAN' which she described as 'a respected software and used throughout the field.'" 167 F. Supp. 3d at 219–220. At the hearing, the claimant objected to the VE's reliance on SkillTRAN due to SkillTRAN's purportedly inaccurate methodology, but the ALJ overruled Plaintiff's objections as "unsupported." *Id.* at 220. The District of Massachusetts disagreed. *Id.* Though the court could not "understand precisely how SkillTRAN calculates the job numbers upon which the VE relied" based on the record before it, the court noted that "the VE's testimony suggests that those numbers may have been based on what the Seventh Circuit has referred to as an 'unacceptably crude method of dividing the number of jobs in some large category . . . by the number of job classifications in the category . . . .'" *Id.* (quoting *Browning v. Colvin*, 766 F.3d 702, 709 (7th Cir. 2014)). The court held that "the lack of clarity is grounds for remand." *Id.*

In *Henderson*, the claimant objected to the VE's qualifications both at the hearing and in a detailed post-hearing brief. 2019 WL 5549907, at *2–3. In that brief, the claimant also raised a number of additional detailed objections including that the resources the VE used, such as SkillTRAN, were not reliable. *Id.* at *3. The court determined that "[w]hile the ALJ does not necessarily have an affirmative duty to question every VE regarding her methodology," the *Henderson* claimant's "numerous detailed objections in his post-hearing brief" "call[ed] into question the reliability of [the] VE's testimony." *Id.* at *8.

---

[3] In Plaintiff's request for review to the Appeals Council, she explained the basis of her appeal in its entirety as follows: "The RFC finding that the claimant could stand and walk approximately six (6) hours in the workday but could balance for only one-third of the workday is internally inconsistent. SSR 83-12." Tr. 10, 176. Plaintiff also filed a supplemental appeal brief raising an Appointments Clause argument. Tr. 274. Plaintiff did not raise the argument she puts forward here when her case was before the Appeals Council. Nor has she raised either the RFC or Appointments Clause arguments in this Court.

In *Pedone*, the claimant objected to both the VE's qualifications and job numbers testimony based on SkillTRAN at the hearing and his pre- and post-hearing memoranda. 2018 WL 460063, at *6. Despite the claimant's detailed objections, the ALJ did not rule on them. *Id.* at *5–6. The court remanded due to inadequate development of the record with respect to the VE's qualifications and reliance on SkillTRAN job numbers. 2018 WL 460063, at *10.

These cases are distinguishable from the facts here. First, Plaintiff raised no detailed objection to the VE's testimony despite ample opportunity to do so. Plaintiff argues that "it is irrelevant that Plaintiff's representative did not elaborate further on [the] objection by way of a post-hearing memorandum" because the objection at the hearing—that "it is not possible to accurately estimate job numbers by specific DOT codes, and therefore, the job numbers should not be considered substantial evidence"—was sufficiently specific. ECF 10-1, at 4–5. I disagree. The cases which Plaintiff cites involve detailed objections to the VE's reliance on SkillTRAN programs and SkillTRAN's underlying methodology. *See Maniscalco*, 167 F. Supp. 3d at 220; *Henderson*, 2019 WL 5549907, at *8; *Pedone*, 2018 WL 460063, at *7–8. Plaintiff's articulated objection relates only to the general ability (or inability) "to accurately estimate job numbers by DOT codes." Tr. 57. "In making disability determinations, [the SSA] rel[ies] primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy." Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000). Plaintiff did not note the VE's reliance on SkillTRAN in her objection at all. *See* Tr. 57.[4] The record before the ALJ contained no evidence or argument contradicting the VE's testimony because Plaintiff failed to supply any despite being afforded the opportunity to do so. Additionally, Plaintiff explicitly declined to object to the VE's qualifications, Tr. 41, as the *Henderson* and *Pedone* claimants did. *Henderson*, 2019 WL 5549907, at *2–3; *Pedone*, 2018 WL 460063, at *6. The ALJ was therefore entitled to rely on the uncontroverted testimony of the VE with "professional knowledge and experience in job placement for over 20 years" as substantial evidence. Tr. 32.

Even if Plaintiff's objection were specifically related to the VE's reliance on SkillTRAN, remand would not necessarily follow here. At the hearing, the exchange between the VE and Plaintiff's attorney proceeded as follows:

> [Plaintiff's Attorney ("Atty"):] And what source or sources do you use to obtain the number of jobs in the economy?
> [VE:] U.S. Department of Labor Bureau of Statistics.
> [Atty:] Do you use any SkillTRAN products or programs?
> [VE:] Yes, I use SkillTRAN to basically look up jobs.
> [Atty:] Do you mean look up like job titles you mean?
> [VE:] Correct, yes.
> [Atty:] And so then where do the numbers come from, do they – do you get them from the BLS [Bureau of Labor Statistics]?

---

[4] Nor did Plaintiff base her appeal to the Appeals Council on the VE's reliance on SkillTRAN. *See supra* note 3.

[VE:] Yes, that's what I had indicated, correct.

Tr. 55–56.  This testimony makes clear that the VE did not rely solely on SkillTRAN when providing job number testimony.  The VE also testified that her testimony was consistent with the DOT, and that the time-off-task estimate was based on her experience.  Tr. 55, *see also* Tr. 32–33.  "At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is [a] consistency" between the VE's testimony and the DOT, as "[o]ccupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the DOT." SSR 00-4p, 2000 WL 1898704, at *2; *see* 20 C.F.R. § 404.1566(d) ("[W]e will take administrative notice of reliable job information available from various governmental and other publications.  For example, we will take notice of . . . *Dictionary of Occupational Titles*, published by the Department of Labor[, and] *Occupational Outlook Handbook*, published by the Bureau of Labor Statistics.").  The ALJ complied with that obligation to develop the record here.

The Supreme Court has made clear that "a vocational expert's testimony may count as substantial evidence even when unaccompanied by supporting data." *Biestek*, 139 S. Ct. at 1155.  District courts have also upheld a VE's reliance on SkillTRAN databases where the VE also used other resources, such as knowledge and expertise.  *Pedone*, 2018 WL 460063, at *7 (citing *Hancock v. Comm'r of Soc. Sec.*, No. 6:15–cv–206–Orl–DNF, 2016 WL 4927642, at *4 (M.D. Fla. Sept. 16, 2016)).  Thus, cases where the district court found a VE's reliance on SkillTRAN job numbers, without sufficient explanation for why such numbers were sound, was grounds for remand are not dispositive here.  Because the ALJ sufficiently resolved Plaintiff's vague objection and because the ALJ permissibly relied on the VE's uncontroverted testimony, I find that the ALJ's step five findings were supported by substantial evidence.  Remand is not warranted.

## V.   <u>CONCLUSION</u>

For the reasons set forth herein, Plaintiff's motion for summary judgment, ECF 10, is DENIED and Defendant's motion for summary judgment, ECF 12, is GRANTED.  Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED.  The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion.  A separate implementing Order follows.

Sincerely,

/s/

Brendan A. Hurson
United States Magistrate Judge